A91A1573. VLAHOS v. SENTRY INSURANCE COMPANY.
(417 SE2d 180)

ANDREWS, Judge.

Angie Vlahos instituted an action against Sentry Insurance Company ("Sentry"), seeking personal injury protection benefits under a Sentry automobile liability insurance policy. Sentry admitted Vlahos had wrecked a vehicle that was covered under a Sentry automobile liability insurance policy, but claimed she was not entitled to lost income benefits because she had no income at the time of the collision. The parties filed opposing motions for summary judgment and entered into a stipulation which included the following facts.

Plaintiff Vlahos was involved in an automobile accident on October 29, 1988. At the time of the accident, she was employed by All Auto Parts, but she did not return to work after the accident and claimed to be physically incapable of returning to work with All Auto Parts. All Auto Parts closed shortly after the accident.

Plaintiff's husband, Louis Vlahos, and his brother, Theodore Vlahos, started All Auto Parts in 1966. The Vlahos brothers were partners. Plaintiff began work in the business full-time in 1980 and her husband died in 1982. Theodore Vlahos died in 1985 and his wife, Georgia Vlahos, continued working part-time in the business doing the books.

Plaintiff Vlahos and her sister-in-law, Georgia, created a partnership in 1983 to continue operating All Auto Parts. The partnership continued through 1985. Plaintiff Vlahos was a 75 percent owner of the partnership and her sister-in-law was a 25 percent owner. Effective January 2, 1986, All Auto Parts was incorporated and plaintiff and her sister-in-law kept the same percentages of ownership.

Vlahos' goal with the business was to increase sales and neither she nor her sister-in-law ever tried to reduce sales. Vlahos never took any cash out of the business that was not reflected in the books, although she was not involved in the bookkeeping aspects of the business. If any money went to her, it was reported as income. A certified public accountant kept the books of the business, prepared the partnership and corporate income tax returns and the financial statements for All Auto Parts, and prepared Vlahos' individual tax returns.

The gross sales for All Auto Parts for 1984 through 1988 were: a) 1984 — $196,994, b) 1985 — $161,198, c) 1986 — $135,739, d) 1987 — $99,767, e) 1988 — $54,846. The last time that All Auto Parts' records reflect that a salary was paid to Vlahos was for the year 1986. In 1986, $7,665 was paid to Vlahos for her work throughout the year and a W-2 was given to her confirming that payment. She was not paid any amount of money for the work she did for All Auto Parts in 1987 and was not paid any amount of money for the work she did for All Auto Parts in 1988.

For the year 1986, while All Auto Parts paid wages to Vlahos in the amount of $7,655, the company had a net loss of $976. For the year 1987, it had a net loss of $12,739. For 1988, All Auto Parts had a net loss of $122,758.

All Auto Parts was a regular, not a Subchapter S, corporation. If any monies were paid to Vlahos, they would have been paid to her as an employee, and she would have received a W-2 form for them. In 1986, she received a W-2 for $7,665. She did not receive a W-2 for either 1987 or 1988.

In 1987, All Auto Parts began keeping an entry on its books reflecting that salary was accruing for plaintiff at the rate of $300 per week. Although the corporate books reflected that salary was accruing for her, she was not paid any money during 1987 or 1988. Further, All Auto Parts did not pay social security taxes, withholding taxes or unemployment taxes on the salary which accrued on the books.

No income tax return was filed for or by plaintiff in 1987 or 1988, because Plaintiff had insufficient income to justify filing a return. In fact, she had no income from All Auto Parts or from any other source for those years.

Although All Auto Parts' books for 1987 and 1988 showed accrued wages to plaintiff, those accrued wages were not paid. Plaintiff thus had no income tax obligation on those monies. The reason that the wages, which accrued on the books, were not paid to plaintiff was because All Auto Parts did not have sufficient income to pay them.

In connection with her claim for benefits, Vlahos signed a Wage and Salary Verification in which she stated that she made $250 to $300 a week. Plaintiff does not remember the basis for the figures that she set forth in that Verification.

The trial court granted Sentry's motion for summary judgment and denied Vlahos' motion for summary judgment, finding that plaintiff was not entitled to lost income benefits under OCGA § 33-34-4 (a) (2) (B) because she had no loss of income or earnings as a result of the collision. Vlahos claims that the trial court erred in granting Sentry's motion and in denying her motion, or at least, that a genuine issue of material fact existed regarding her lost income.

The trial court's grant of summary judgment to Sentry was proper and we find that as a matter of law, Vlahos failed to establish the fact of her lost income claim with reasonable certainty. Here, the stipulation established that All Auto Parts had not paid a salary to Vlahos since 1986, when she was paid $7,665 and the company showed a net loss of $976. In 1987, Vlahos was not paid any salary and the corporate records reflected a net loss of $12,739. Again in 1988, Vlahos received no salary and All Auto Parts had a net loss of $122,758. Vlahos did not receive a W-2 for 1987 or 1988, nor did she pay income tax for those years. Furthermore, the sales figures showed that All Auto Parts' gross sales had steadily decreased from 1984 until 1988, and the parties admitted that Vlahos' salary was not paid because the corporation simply did not have the money to pay it.

Given these facts, the trial court did not err in granting summary judgment on the lost wage claim, because the claim was too speculative. Although there appear to be no Georgia cases which directly address this factual situation, OCGA § 33-34-4 (a) (2) (B) does not authorize payment of lost wages in a situation in which a lost wage claim is so speculative.

An insured must establish with reasonable certainty his entitlement to benefits for loss of income during the period of his disability. See generally *Midland Ins. Co. v. West*, 175 Ga. App. 419 (333 SE2d 628) (1985); *Leonaitis v. State Farm Mut. Ins. Co.*, 186 Ga. App. 854 (368 SE2d 775) (1988). In turning to cases decided under tort law for guidance we find that " '[l]ost wages and earnings are not recoverable

where the evidence does not show the amount of the loss with reasonable certainty.' " (Emphasis and citations omitted.) *Midland Ins. Co.,* supra at 421; *State Farm Mut. Ins. Co. v. Moss,* 152 Ga. App. 84, 85 (2) (262 SE2d 248) (1979). In the context of lost profits in a tort case, a plaintiff must show a "track record" of profitability since the amount claimed cannot be based on speculation, conjecture or guesswork. See generally *Pounds v. Hosp. Auth. of Gwinnett County,* 197 Ga. App. 598 (399 SE2d 92) (1990).

Applying these principles to the instant case, we find that the trial court's grant of summary judgment was proper since as a matter of law, Vlahos failed to establish with reasonable certainty her lost wage claim. All Auto Parts' financial history established that Vlahos had no reasonable expectation that her accrued income would ever mature into cash income. In fact, there was no evidence that Vlahos' accrued salary was anything other than an accounting practice. Although there are situations in which a plaintiff could properly assert a claim of lost wages under OCGA § 33-34-4 (a) (2) (B) based on accrued income, the stipulated facts here established that this case is not one of them, since there was no reasonable proof of Vlahos' claim of $300 a week. "In other words [s]he has not shown with reasonable certainty that [s]he has incurred a loss of income or earnings which, if not for the accident and alleged disability, [s]he would otherwise have collected." (Citations omitted.) *Midland Ins. Co.,* supra at 421; see generally *Southeastern Fidelity Ins. Co. v. Hicks,* 143 Ga. App. 165 (237 SE2d 655) (1977).

We are aware that "[t]o recover benefits for 'loss of income or earnings during disability' pursuant to OCGA § 33-34-4 (a) (2) (B), an insured is required merely to establish with 'reasonable certainty' the fact and amount of such lost income or earnings, and this he may accomplish either by showing that he previously had accepted an offer of income-generating employment for the period in question or by showing 'a continuous pattern of employment prior to the period of disability.' *Allison v. Auto-Owners Ins. Co.,* 256 Ga. 446, 447 (349 SE2d 682) (1986), citing *Leonard v. Preferred Risk Mut. Ins. Co. v. West,* 175 Ga. App. 419, 420-421 (333 SE2d 628) (1985). Accord *Insurance Co. of North America v. Smith,* 183 Ga. App. 266 (1) (358 SE2d 658) (1987)." (Emphasis omitted.) *Auto-Owners Ins. Co. v. Sapp,* 185 Ga. App. 661, 662 (365 SE2d 286) (1988). We do not interpret these cases as dispensing with the requirement that a claimant show with reasonable certainty that the continuous employment was "income-generating." See generally *State Farm Mut. Auto. Ins. Co. v. Smith,* 245 Ga. 654 (266 SE2d 505) (1980). Here the fact that Vlahos was continuously employed and that All Auto Parts was obligated to record an accrued salary of $300 per week is outweighed by the fact that she had not been paid a salary in the 22 months preceding the

accident and that there was no evidence the accrued amounts would *ever* be paid.

Vlahos' argument from *Vansant v. Allstate Ins. Co.*, 142 Ga. App. 684 (236 SE2d 858) (1977), that " 'income or earnings' includes delayed earnings such as pensions or annuities under the statutory scheme" does not apply here since the earnings were not established with reasonable certainty. Id. at 687; see also *State Farm Mut. Auto. Ins. Co. v. Chastain*, 167 Ga. App. 822 (307 SE2d 717) (1983). Therefore, the trial court did not err in granting Sentry's motion for summary judgment.

*Judgment affirmed. Birdsong, P. J., Pope, Beasley and Cooper, JJ., concur. Sognier, C. J., McMurray, P. J., Carley, P. J., and Johnson, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent. It is my view that the undisputed evidence requires a finding that Angie Vlahos is entitled to lost income benefits under OCGA § 33-34-4 (a) (2) (B).

"To recover benefits for 'loss of income or earnings during disability' pursuant to OCGA § 33-34-4 (a) (2) (B), an insured is required merely to establish with 'reasonable certainty' the fact and amount of such lost income or earnings, and this he may accomplish *either* by showing that he previously had accepted an offer of income-generating employment for the period in question *or* by showing 'a continuous pattern of employment prior to the period of disability.' *Allison v. Auto-Owners Ins. Co.*, 256 Ga. 446, 447 (349 SE2d 682) (1986), citing *Leonard v. Preferred Risk Mut. Ins. Co.*, 247 Ga. 574 (1) (277 SE2d 675) (1981), and *Midland Ins. Co. v. West*, 175 Ga. App. 419, 420-421 (333 SE2d 628) (1985). Accord *Insurance Co. of North America v. Smith*, 183 Ga. App. 266 (1) (358 SE2d 658) (1987)." *Auto-Owners Ins. Co. v. Sapp*, 185 Ga. App. 661, 662 (365 SE2d 286). In the case sub judice, the stipulated facts reveal that Angie Vlahos was continuously employed by All Auto Parts from January 2, 1986; that she was involved in an automobile collision on October 29, 1988, and has not worked since as she was physically incapable of returning to work with All Auto Parts which closed shortly after the collision. Further, the undisputed evidence shows that All Auto Parts was obligated to pay Angie Vlahos a salary of $300 per week. This evidence is sufficient to establish plaintiff's entitlement to lost income benefits for the entire period of her disability under OCGA § 33-34-4 (a) (2) (B). Nonetheless, Sentry contends plaintiff Vlahos is not entitled to recover lost income benefits because All Auto Parts did not pay plaintiff's salary for almost 22 months before the collision. In this vein, the majority contends there is insufficient evidence to establish plaintiff's "lost income with reasonable certainty." These contentions are mis-

placed.

Sentry and the majority rely heavily upon the profit and loss history of All Auto Parts in concluding that plaintiff had no lost income as a result of her disability. The majority even states that Angie Vlahos "must show a 'track record' [of her corporate employer's] profitability . . ." before she can recover "lost profits in a tort case. . . ." The majority concludes that Angie Vlahos is not entitled to lost income benefits because she has "no reasonable expectation that her accrued income would ever mature into cash income." These positions are dependent upon the unsupported conclusion that All Auto Parts is insolvent, i.e., so capital poor that All Auto Parts is unable to cover its corporate liabilities. Further, the positions taken by Sentry and the majority focus on the wrong issue, i.e., a corporation's ability to pay debt.

The controlling issue in the case sub judice is whether plaintiff was continuously employed before disability and how much income she is entitled to recover as a result of her loss. *Auto-Owners Ins. Co. v. Sapp*, 185 Ga. App. 661, 662, supra. The inability of All Auto Parts to pay plaintiff's salary is not relevant to plaintiff's undisputed right to collect $300 per week from her employer. To say otherwise, would ignore the corporate entity (All Auto Parts) and assume fraud on the part of a corporate officer. Consequently, since the stipulated facts show a continuous pattern of employment prior to the period of disability and since there is no evidence that plaintiff's salary was fraudulently accrued, it is my view that Angie Vlahos is entitled to recover lost income benefits based on her $300 per week salary for the entire period of disability. See *Leonaitis v. State Farm Mut. Ins. Co.*, 186 Ga. App. 854, 855 (1) (368 SE2d 775), where the insured's compensation for lost income from the corporation he owned and operated was limited to his corporate salary. Compare *Southeastern Fidelity Ins. Co. v. Hicks*, 143 Ga. App. 165 (1) (237 SE2d 655), where income benefits were denied because the insured was working at her mother's place of employment without pay and as an accommodation to her mother.

I am authorized to state that Chief Judge Sognier and Judge Johnson join in this dissent.

DECIDED MARCH 5, 1992 —
RECONSIDERATION DENIED MARCH 25, 1992 —

*Zipperer & Lorberbaum, Ralph R. Lorberbaum,* for appellant.
*Karsman, Brooks & Calloway, R. Kran Riddle,* for appellee.